668 A.2d 557

**WINTHROP & CO., INC., Appellant,**

**v.**

**Martin MILGROM, Ye Olde Cleanery, Inc., M & E Corp.**

Superior Court of Pennsylvania.

Argued April 19, 1995.

Filed Dec. 6, 1995.

---

142

Jeffrey H. Brahin, Doylestown, for appellant.

Jerome Brown, Philadelphia, for appellee.

Before WIEAND, BECK and HOFFMAN, JJ.

BECK, Judge.

We address whether a claim for a commission for the sale of a business and related real estate is defeated by the Real Estate Licensing and Registration Act, 63 P.S. §§ 455.101—455.902 (the "RELRA"), because the claimant is not a licensed real estate broker. We conclude that the trial court could not properly determine at the demurrer stage of the proceedings that appellant's claim was precluded by the RELRA, and we therefore reverse and remand for further proceedings.

Because this appeal is from an order sustaining a demurrer, we must accept as true all well-pleaded facts contained in the complaint together with every reasonable inference which may be drawn therefrom. *Preiser v. Rosenzweig*, 418 Pa.Super. 341, 346, 614 A.2d 303, 305 (1992), *aff'd*, 538 Pa. 139, 646 A.2d 1166 (1994); *Wojciechowski v. Murray*, 345 Pa.Super. 138, 140, 497 A.2d 1342, 1343 (1985).

The facts alleged in the complaint establish that in November, 1989, appellant, Winthrop & Co., Inc., a Pennsylvania corporation, entered into an agreement (the "Agreement") with appellees: Ye Old Clean'ry, a corporation operating a cleaning business; M & B Corp., a corporation which owned the real estate upon which Ye Old Clean'ry operated; and Martin Milgrom, an officer and shareholder of both corporations. Under the terms of the Agreement, appellant was to act as

exclusive broker in the possible sale, merger, consolidation or other business combination *in one or a series of transactions* involving *all or a portion* of the business, stock or assets ("Transaction") of Ye Old Cleaner [sic], Inc. and the related real estate ... owned by M & B Corp. (jointly known as the "Company").

Complaint, Exhibit A at 1 (emphasis added). The Agreement further provided that "[a]s compensation for the services to be provided by Winthrop under the terms of this agreement, upon consummation or closing of a Transaction, the Company agrees to pay to Winthrop a transaction fee equal to $100,000." *Id.* Under the terms of the Agreement, either party could terminate the Agreement upon 90 days' written notice to the other. The Agreement was reduced to writing in an engagement and indemnification letter sent by appellant's chairman to Martin Milgrom, who countersigned the letter denoting agreement to and acceptance of its terms.

Beginning in November 1989 and continuing through 1993, appellant, with the knowledge and consent of the appellees, sought out and presented to appellees prospective purchasers of the business. During this period, appellant introduced Mr. Sang Park to the appellees as a potential buyer, and in June 1993, Park and/or a related entity acquired Ye Old Clean'ry and/or M & B. Neither party had terminated the Agreement prior to this acquisition. Appellees did not pay appellant the $100,000 compensation provided for in the agreement.

Upon appellees' failure to pay the $100,000, appellant brought this action sounding in breach of contract and unjust enrichment. Appellees filed preliminary objections contending, *inter alia,* that appellant's complaint failed to state a cause of action since the plaintiff was not a licensed real estate broker as required pursuant to the RELRA. The trial court found that appellant acted as a real estate broker in the context of the transaction at issue and that appellant had therefore violated the RELRA, which requires all entities

acting as real estate brokers to be licensed.[1] The trial court therefore concluded that pursuant to the RELRA, appellant could not be compensated for its services.[2]

In our review of this matter, we are mindful that preliminary objections should be sustained "only where it appears, with certainty, that the law permits no recovery under the allegations pleaded." *Gallagher v. City of Philadelphia,* 142 Pa.Commw. 487, 491, 597 A.2d 747, 748 (1991).

*Al Hamilton Contracting Co. v. Cowder,* 434 Pa.Super. 491, 495, 644 A.2d 188, 190 (1994). Our task is thus to determine whether the facts pleaded in the complaint, together with all reasonable inferences arising therefrom, can possibly state a cause of action permitting recovery. *Id.* (citing *Van Mastrigt v. Delta Tau Delta,* 393 Pa.Super. 142, 147–48, 573 A.2d 1128, 1130 (1990)).

The RELRA provides that

It shall be unlawful for any person, directly or indirectly, to engage in or conduct, or to advertise or hold himself out as engaging in or conducting the business, or acting in the capacity of a broker ... within this Commonwealth without first being licensed or registered as provided in this act. . . .

1. The trial court also found that in contracting to perform the services outlined in the agreement, appellant "represented itself as real estate broker." Trial Court Opinion at 2. This finding is clearly erroneous based on the record developed to this point. Nothing in either the Agreement or appellant's complaint supports a finding that appellant at any time represented to appellees either orally or in writing that it was qualified as a real estate broker. Rather, appellant's letterhead indicates that its business is mergers and acquisitions. Moreover, the Agreement, to the extent that it dealt with a transaction involving real estate, clearly dealt with such real estate only as part of the assets which might be included in a potential sale of the subject businesses. Nothing in the agreement suggests that appellant offered its services in connection with the sale of any real estate other than that subsumed within the scope of the businesses covered by the Agreement.

2. Although the trial court cited to the Real Estate Brokers License Act, 63 P.S. §§ 431–448, which was repealed in 1980 and thus was inapplicable to this case, the pertinent provisions of the RELRA, 63 P.S. §§ 455.101–455.902, are in all material respects substantially the same as those of the repealed act.

63 P.S. § 455.301. The Act also precludes recovery of compensation by any person who acts in violation of its provisions:

No action or suit shall be instituted, nor recovery be had, in any court of this Commonwealth, by any person for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this act by a person other than a licensed broker ... unless such person was duly licensed and registered hereunder as broker ... at the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service.

63 P.S. § 455.302. A "broker" is defined in the Act as

Any person who for another and for a fee, commission or other valuable consideration:

(1) negotiates or aids any person in locating or obtaining for purchase, lease or acquisition of interest in any real estate;

(2) negotiates the listing, sale, purchase, exchange, lease, time share and similarly designated interests, financing or option for any real estate;

(3) manages or appraises any real estate;

(4) represents himself as a real estate consultant, counsellor, house finder;

(5) undertakes to promote the sale, exchange, purchase or rental of real estate: Provided, however, That this provision shall not include any person whose main business is that of advertising, promotion or public relations; or

(6) attempts to perform any of the above acts.

63 P.S. § 455.201.

■ These provisions, which are substantially similar to those of the RELRA's predecessor act, the Real Estate Brokers License Act, have been construed by our appellate courts "as precluding any recovery of a commission, fee, or other consideration by anyone who without a license acts as a broker in a transaction involving real estate." *Burke v. Israel,* 264 Pa.Super. 286, 290, 399 A.2d 779, 781 (1979) (discussing provi-

sions of Real Estate Brokers License Act) (citing *Verona v. Schenley Farms Co.,* 312 Pa. 57, 167 A. 317 (1933); *Harrison v. Soffer,* 221 Pa.Super. 275, 289 A.2d 752 (1972); *Alford v. Raschiatore,* 163 Pa.Super. 635, 63 A.2d 366 (1949)). Moreover, because section 455.302 of the RELRA prohibits institution of a suit for compensation by an unlicensed person for a transaction prohibited by the Act, a demurrer may be granted· if, as a matter of law, the facts alleged in the complaint clearly bring the matter within the scope of the RELRA and the plaintiff has not pleaded the fact of licensure in accordance with the Act. *See Burke v. Israel, supra* 264 Pa.Super. at 293, 399 A.2d at 783 (discussing similar provision of Real Estate Brokers License Act).

 In this case, it is clear that appellant has not pleaded that he possessed a license pursuant to the RELRA at the time the transaction in question took place. However, it is not clear based on the facts asserted that the transaction or a portion of the transaction for which compensation is sought fell within the scope of the RELRA as a matter of law. The Agreement provided that the sale could take place in "one or a series of transactions" involving "all or a portion of the business, stock or assets ... and the related real estate." Accordingly, we must conclude that the trial court committed an error of law in granting appellees' demurrer.

It is true, as the trial court noted, that this court has held that the RELRA applies to bar an action for compensation for the transfer of an interest in real estate even if the real estate transfer occurred in the context of a transaction which also involved the sale of a business or other assets. *Burke v. Israel, supra* (sale of coal interests and lease of related real estate); *Alford v. Raschiatore, supra* (sale of restaurant business and real estate on which it was located); *Burns v. Gartzman,* 139 Pa.Super. 453, 11 A.2d 708 (1939)(sale of bakery business and lease of related real estate). However, we have also held that a commission in connection with the sale of a business is not precluded, even if the same purchaser also purchased related real estate, where the sale of the assets occurred in a separate transaction from the sale of the real

estate and where plaintiff sought compensation only for the transfer of the business, not for the sale of the real estate. *Schoenfeld v. Meckes*, 166 Pa.Super. 101, 70 A.2d 377 (1950)(plaintiff could recover compensation based solely on sale of business where sale of business was separate from sale of real estate to same buyer). Further, neither this court nor our supreme court has spoken directly to the issue of whether, in a single transaction involving the transfer of both real estate and other business assets, a plaintiff may recover compensation based solely upon the sale of the business assets.[3]

■ It remains unsettled as a matter of law whether a claim for compensation based on a sale of business assets is severable from a claim for compensation based on a transfer of related realty occurring in the same transaction. However, we need not decide this unsettled question of law in the context of this appeal. At this stage of the proceedings it has not been established whether a transfer of an interest in real estate actually occurred or whether appellant's claim for compensation is based in whole or in part upon such a transfer.

If appellant is asserting the severability of the transaction, or if appellant is asserting separate transactions involving the business and the real estate, modern business practices would support recovery by appellant of compensation in whole or part. First, the rationale underlying statutes such as the RELRA was the protection of the public and the prevention of fraud. *See Verona v. Schenley Farms Co., supra,* 312 Pa. at 64–65, 167 A. at 320. The statute was enacted for the benefit of the average consumer who entered into an isolated transac-

---

**3.** In *Burns v. Gartzman, supra,* this court overturned a judgment in favor of plaintiff for an amount representing a 5% commission on the sale of business assets plus the commission established by the Philadelphia Real Estate Board for the lease of the related real estate. However, it does not appear that plaintiff in that case argued that he was entitled to recover the 5% commission on the non-real assets even if the commission on the transfer of the real estate was unrecoverable under the Real Estate Brokers License Act, and the superior court opinion did not address that issue. In both *Burke v. Israel, supra,* and *Alford v. Raschiatore, supra,* plaintiffs demanded commissions which were based upon the transfer of the interest in real estate.

tion involving residential real estate or the transfer of a small business and was not designed to apply to the interactions of business persons who regularly deal with complicated stock and asset transfers. *See* note 4, *infra.* Business transactions today frequently include the transfer of the stock and assets of a business which may include real estate. In many cases the transactions are arm's length ones between sophisticated parties who are not in the class the statute was enacted to safeguard. Knowledgeable professionals who make a living in the complicated and risky world of buying and selling businesses are not the intended beneficiaries of the RELRA and should not be able to avoid obligations they knowingly assumed based on the fact that a particular asset transfer happened to include real estate.

We find persuasive the comments of the U.S. Court of Appeals for the Third Circuit in discussing the purposes behind the RELRA and their application to sophisticated business transactions:

> The Pennsylvania legislature's intent in passing the [RELRA] was simple and abundantly clear. The goal of the Act was emphasized in its legislative history. The legislators indisputably expressed the design and goal of the act to be the exclusion of unscrupulous, incompetent, untrained, and insolvent tradesmen from the real estate trade. The regulatory scheme in general, including the denial of commissions to unlicensed brokers in particular, can be viewed as the legislators' commitment to preventing brokers and their employees from gouging, exploiting, and abusing ordinary consumers: the buyers and sellers of homes, condominia, and the like.
>
> In our perception, the evils that the Act were [sic] designed to thwart can have little application to commercial transactions that involve the sale of stock of an entire enterprise, even though the company's assets may include some real estate.

*Gruber v. Owens–Illinois Inc.,* 899 F.2d 1366, 1373–74 (3d

Cir.1990).[4] The *Gruber* court's holding was specifically applicable to whether a commission could be recovered for a sale of all of the stock of a corporation whose assets included real estate. However, the *Gruber* court's statement regarding the purposes underlying the RELRA is equally applicable to other transactions involving the sale of assets including real estate in a sophisticated transaction.

Here, the Agreement between the parties contemplated the possible sale of both the business assets and the real estate owned by appellees. However, the Agreement provided that such sale could take place in "one or a series of transactions" involving "all or a portion of the business, stock or assets ... and the related real estate." The Agreement also provided that appellant would be due compensation "upon consummation or closing of a Transaction." The parties' Agreement clearly contemplated that disposal of appellees' property might take place in more than one transaction involving one or a number of buyers, and also permitted compensation for a transaction involving less than all of the property owned by appellees. Further, appellant's complaint sought compensation based only upon the fact that a transaction covered by the Agreement had taken place and did not base the claim for such compensation upon a transfer of realty. Since the Agreement's terms could entitle appellant to compensation for a transaction not prohibited by the RELRA and since appellant's complaint did not establish that a prohibited transaction

---

**4.** To support its rationale, the *Gruber* court made reference to the legislative debate in connection with RELRA. *See*, 163 Legis.Jrnl.Comm. of Pa. 2642–44, 2649–55 (1979) (comments by Rep. Wilson on preventing "fraud, misrepresentation, deceit"—at 2643; Rep. Murphy on preventing "rip off artists" and fraud in "Florida [type] land sales ... where people have purchased property and ... might arrive at the site ... and find there are no roads, no sewerage, no water"—at 2649; Rep. Dorr on ensuring that all employees of real estate agencies representing themselves as agents or brokers be licensed—at 2652; Rep. Earley urging that the legislation ban realtor discrimination against minorities and the handicapped—at 2655) *cited in Gruber, supra* at 1373 n. 9. The *Gruber* court also noted that these same purposes animated the predecessor act, 63 P.S. § 431 *et seq.*, enacted in 1929. *See*, Comment, Pennsylvania Real Estate Licensing Act of 1980, 54 Temple L.Q. 806, 810–12 (1981) *cited in Gruber, supra* at 1373 n. 9.

was the basis of its claim, the court erred in granting the demurrer. *See Al Hamilton Contracting Co. v. Cowder, supra; Schoenfeld v. Meckes, supra.*

Order reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.